**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

*State of New Mexico vs. U.S. Department of Justice, et al.*

# Complaint-Exhibit 23

Outlook

**RE: Conversation between the USAO-SDNY & NMDOJ re: Epstein Records**

**From** Buckley, Sean (USANYS) <Sean.Buckley@usdoj.gov>
**Date** Fri 7/31/2026 3:04 PM
**To** Sean Sullivan <SSullivan@nmdoj.gov>

Thank you for your email, Sean. Suffice to say, I do not agree with your characterization of our discussion set forth below. As discussed on our call, we cannot and therefore will not provide unredacted records pursuant to the Epstein Files Transparency Act as well as the protective orders that are in place in the relevant actions in the Southern District of New York. As I mentioned, there is detailed correspondence to the Court outlining the procedures used to redact files consistent with those protective orders as well as the Act.

My Office remains available to assist and cooperate with New Mexico with its investigation in any way it can consistent with the law, the orders of the Court, and pursuant to applicable policies and procedures. The substance of the information provided by the victims has been published on the Epstein Library pursuant to the Act, and I do not understand why providing unredacted materials with victim-identifying information would advance the investigation in a manner that contacting counsel for the victims would not. Protecting victim privacy is a paramount goal for my office and the Department more broadly, and neither *Touhy* nor a desire to cooperate and assist trumps victim privacy. If a victim wants her identity to be known to the NMDOJ, the appropriate way to do so is to go through counsel as I suggested on that call. There is no need for the victims to start over with criminal investigators as the substance of the disclosures have been published, just not the victim-identifying information. If, for example, you identify a particular document or documents that are relevant to your investigation, we could facilitate an introduction to counsel for the relevant victim (assuming the victim and her counsel were willing), but as you well know, the Act and the protective orders do not permit disclosure of victim-identifying information *carte blanche*, and you have provided no reasonable basis otherwise to justify such sweeping disclosures.

I am happy to discuss further, but just wanted to clarify our position in view of your email.

Best,
Sean

**From:** Sean Sullivan <SSullivan@nmdoj.gov>
**Sent:** Thursday, July 16, 2026 12:12 PM
**To:** Buckley, Sean (USANYS) <Sean.Buckley@usdoj.gov>
**Subject:** [EXTERNAL] Conversation between the USAO-SDNY & NMDOJ re: Epstein Records

Good morning Mr. Buckley -

This correspondence memorializes our conversation of July 14th concerning the NMDOJ's ongoing efforts to obtain access to unredacted Epstein records essential to its criminal investigation - efforts that have now continued without resolution for more than five months. The NMDOJ entered this process in good faith and was encouraged by the assurances of cooperation conveyed by Main Justice representatives in early April. The assured cooperation

also would be consistent with the long history of federal-state cooperation in criminal investigations. It is disheartening that the Department's actions so far have been inconsistent with its pledge to cooperate and that history.

During our conversation, you indicated that the USAO-SDNY does not intend to produce unredacted records to the NMDOJ even though NMDOJ may be the only remaining office that can try to pursue justice for victims through the criminal system. You offered two primary bases for that position.

First, the USDOJ's position is that disclosing records necessary for the NMDOJ's criminal investigation would violate the privacy and confidentiality to be afforded Epstein survivors. You mentioned that the NMDOJ should consider speaking with survivor counsel as an alternative to securing unredacted materials. That is not an approach that serves survivors in any way. It forces them to start over with criminal investigators when they already have provided substantial information to USDOJ and were able to do so much closer in time to the events they had to relay. It also ignores that most victims want to know if the full measure of accountability federal law enforcement failed to provide is available through state authorities. As I noted during our conversation, this office has been in direct contact with numerous survivors and their counsel, many of whom have expressed a clear desire for the USDOJ to cooperate fully with the NMDOJ's investigation. Withholding investigative records from an agency that is legally and ethically obligated to handle them with the utmost care for survivors is not a survivor-centered position — it is an obstacle to the justice survivors are seeking.

Second, you raised the existence of protective orders that USDOJ is claiming restrict disclosure of certain Epstein records. While those orders clearly prohibit dissemination to the general public, I questioned whether they were intended to bar law enforcement to law enforcement cooperation of the kind the NMDOJ is seeking. You indicated your belief that they did. I then asked whether the USAO-SDNY would be willing to seek a modification of the applicable protective orders to permit disclosure for law enforcement purposes, or alternatively, to join the NMDOJ in making such a request to the court. You indicated that while you would need to review any formal request before responding that USDOJ support for modification was "unlikely." The obvious question that raises is why USDOJ would not cooperate with obtaining court approval for any modification necessary. USDOJ already has filed such a motion in the Maxwell case, and if the goal is cooperation, there is no reason not to work with us to promptly remove whatever impediment you contend the orders create to providing NMDOJ the information it needs for purpose of its investigation.

I also noted for you the inconsistency in the USDOJ's position now given that Main Justice itself that directed the NMDOJ to submit a formal *Touhy* letter through the USAO-DNM — a process USDOJ had no reason to initiate only to ultimately refuse disclosure. Associate Deputy AG Pestana expressly affirmed the Department's cooperation with our investigation, and the USDOJ's own public statements within the past week have reiterated support for New Mexico's criminal inquiry. As recently as yesterday, I'm sure you saw Acting AG Blanche and Jay Clayton state that the USDOJ would cooperate with the NMDOJ. The objections being raised stand in direct contradiction to each of those representations.

There are concrete steps the USDOJ could take if cooperation were genuinely its objective. Among them, the USDOJ could seek modification of any governing protective orders to permit disclosure to the NMDOJ for law enforcement purposes — subject to reasonable confidentiality conditions that this office stands ready to negotiate and observe.

Notwithstanding that the NMDOJ proceeded through the *Touhy* process at the USDOJ's own direction, this office is willing to explore any procedural avenue that would result in the production of necessary records. Should the Department determine that a grand jury subpoena

would inform its analysis or otherwise facilitate disclosure, the NMDOJ is prepared to pursue one at the earliest opportunity. But time is of the essence here, and the delay that already has occurred is prejudicing our work. We need immediate meaningful engagement commensurate with the seriousness of these issues.

The NMDOJ is disappointed by the Department's approach to date but remains hopeful that the USDOJ's future actions towards our investigation will reflect the cooperative spirit its public statements have consistently promised.

Thank you for your attention to this matter.

NM Department of Justice Seal

**Sean Sullivan**
Special Counsel
**New Mexico Department of Justice**
505-670-1239
SSullivan@nmdoj.gov

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.