**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| State of New Mexico | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-cv-2762-AHA |
| | ) | |
| Department of Justice, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, MOTION FOR**
**SUMMARY JUDGMENT**

## TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 1

I. STATUTORY AND REGULATORY BACKGROUND ........ 1

a. The Epstein Files Transparency Act ........ 1

b. The Privacy Act ........ 2

c. DOJ's *Touhy* Regulations ........ 3

II. FACTUAL AND PROCEDURAL BACKGROUND ........ 4

LEGAL STANDARD ........ 7

ARGUMENT ........ 8

I. The Court Should Dismiss New Mexico's Complaint Under Rule 12(b)(1) Because Denying New Mexico's *Touhy* Request is Committed to Agency Discretion by Law. ........ 8

a. DOJ's *Touhy* regulations commit New Mexico's *Touhy* request to agency discretion here. ........ 9

b. Neither the Privacy Act nor the EFTA contain manageable standards by which to judge DOJ's use of discretion. ........ 11

II. The Court Should Grant Summary Judgment in Favor of DOJ Because Denying New Mexico's *Touhy* Request Was Not Arbitrary or Capricious. ........ 13

a. DOJ properly rejected New Mexico's *Touhy* request under 28 C.F.R. § 16.26(b)(1) because disclosure would violate the EFTA and the Protective Orders. ........ 14

b. DOJ properly rejected New Mexico's *Touhy* request under 28 C.F.R. § 16.26(b)(1) because disclosure would violate the Privacy Act and other statutes. ........ 17

c. DOJ properly rejected New Mexico's *Touhy* request under 28 C.F.R. § 16.26(b)(5) because disclosure would negatively impact law enforcement and violate privileges…. ........ 19

d. DOJ properly rejected New Mexico's *Touhy* request under 28 C.F.R. § 16.22(c) and § 16.24(c) because the request is overbroad. ........ 21

e. DOJ has not ignored factors its *Touhy* regulations require it to consider. ........ 22

III. Denying New Mexico's *Touhy* Request is not Unlawfully Withheld or Unreasonably Delayed Agency Action. ........ 23

CONCLUSION ........ 24

## TABLE OF AUTHORITIES

### Cases

*ACI Constr., LLC v. United States*,
No. 1:19-CV-00054-JNP-JCB, 2020 WL 10317460 (D. Utah July 7, 2020) ..................... 10, 16

*A.N.S.W.E.R. Coal. v. Jewell*,
292 F.R.D. 44 (D.D.C. 2013) ........................................................................................ 18

*Agility Pub. Warehousing Co. K.S.C.P. v. U.S. Dep't of Def.*,
246 F. Supp. 3d 34 (D.D.C. 2017) ........................................................................... 12, 13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................................ 7

*Arabzada v. Donis*,
725 F. Supp. 3d 1 (D.D.C. 2024) .................................................................................. 23

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................................ 7

*Doe v. DiGenova*,
779 F.2d 74 (D.C. Cir. 1985) ......................................................................................... 17

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021) ...................................................................................................... 13

*Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*,
103 F.3d 1007 (D.C. Cir. 1997) ................................................................................ 20, 21

*Freedom Watch, Inc. v. CIA*,
895 F. Supp. 2d 221 (D.D.C. 2012) ............................................................................... 20

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016) ........................................................................................................ 11

*Heckler v. Chaney*,
470 U.S. 821 (1985) .................................................................................................... 8, 12

*Illinois v. Interstate Com. Comm'n*,
713 F.2d 305 (7th Cir. 1983) ......................................................................................... 10

*Jerome Stevens Pharms., Inc. v. FDA*,
402 F.3d 1249 (D.C. Cir. 2005) ....................................................................................... 7

*Kemp v. United States*,
596 U.S. 528 (2022) ...................................................................................................... 15

*Khadr v. United States*,
529 F.3d 1112 (D.C. Cir. 2008)........................................................................................ 6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........................................................................................................ 7

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
336 F.3d 1094 (D.C. Cir. 2003)...................................................................................... 22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)......................................................................................................... 7

*Moms Against Mercury v. FDA*,
483 F.3d 824 (D.C. Cir. 2007).......................................................................................... 7

*Nationwide Mut. Ins. Co. v. Darden*,
503 U.S. 318 (1992)....................................................................................................... 15

*Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*,
468 F.3d 826 (D.C. Cir. 2006)........................................................................................ 21

*Neder v. United States*,
527 U.S. 1 (1999)........................................................................................................... 15

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004)......................................................................................................... 10

*Pretrial Servs. Agency for D.C. v. Sanders*,
780 F. Supp. 3d 286 (D.D.C. 2025) ................................................................................. 3

*Sackett v. EPA*,
598 U.S. 651 (2023)....................................................................................................... 15

*Scolaro v. District of Columbia Bd. of Elections & Ethics*,
104 F. Supp. 2d 18 (D.D.C. 2000) ................................................................................... 7

*Sec'y of Lab. v. Twentymile Coal Co.*,
456 F.3d 151 (D.C. Cir. 2006).......................................................................................... 8

*Sierra Club v. Jackson*,
648 F.3d 848 (D.C. Cir. 2011)........................................................................................11

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)........................................................................................................... 6

*Tao v. Freeh*,
27 F.3d 635 (D.C. Cir. 1994)............................................................................................ 7

*Telecomms. Rsch. & Action Ctr. v. FCC*,
750 F.2d 70 (D.C. Cir. 1984)........................................................................................ 22

*TikTok Inc. v. Garland*,
122 F.4th 930 (D.C. Cir. 2024) ...................................................................................... 7

*Transp. Trades Dep't, AFL-CIO v. Nat'l Mediation Bd.*,
530 F. Supp. 3d 64 (D.D.C. 2021) ................................................................................. 7

*United States ex rel. Touhy v. Ragen*,
340 U.S. 462 (1951)......................................................................................................... 3

*United States v. Aziz*,
No. 24-CR-00380 (NCM), 2026 WL 2123621 (E.D.N.Y. July 20, 2026)............................... 18

*United States v. Ermoian*,
752 F.3d 1165 (9th Cir. 2013) ......................................................................................... 9

*United States v. Kelley*,
36 F.3d 1118 (D.C. Cir. 1994).......................................................................................... 9

*United States v. Martinez*,
764 F. Supp. 2d 166 (D.D.C. 2011) ................................................................................ 19

*Watts v. SEC*,
482 F.3d 501 (D.C. Cir. 2007)........................................................................................... 9

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
586 U.S. 9 (2018)............................................................................................................. 8

**Statutes**

5 U.S.C. § 301 ..................................................................................................................... 2

5 U.S.C. § 551(13) .............................................................................................................. 12

5 U.S.C. § 552a (2018) ......................................................................................................... 2

5 U.S.C. § 552a(b) ........................................................................................................11, 16

5 U.S.C. § 552a(b)(3)........................................................................................................... 16

5 U.S.C. § 552a(b)(7)...............................................................................................11, 16, 17

5 U.S.C. § 552a(b)(9)........................................................................................................... 16

5 U.S.C. § 701(a)(2)........................................................................................................ 8, 12

5 U.S.C. § 706(2)(A)(C) ...................................................................................................... 21

18 U.S.C. § 1512(c) .......... 9

18 U.S.C. § 3123(d) .......... 18

18 U.S.C. § 3509(d) .......... 17

31 U.S.C. § 5319 .......... 17

Computer Matching and Privacy Protection Act of 1988,
Pub. L. No. 100-503, 102 Stat. 2507 (1988) .......... 2

Epstein Files Transparency Act,
Pub. L. No. 119-38, 139 Stat. 656 (2025) .......... *passim*

Epstein Files Transparency Act II,
S. 5005, 119th Cong. (July 15, 2026) .......... 12

Privacy Act of 1974,
Pub. L. No. 93-579, 88 Stat 1896 (1974) .......... 2

S. Comm. on Gov't. Operations & H.R. Comm. on Gov't. Operations, 94th Cong., 2d Sess., Legislative History of the Privacy Act of 1974 S. 3418 (Public Law 93-579): Source Book on Privacy (Comm. Print 1976) .......... 2

**Rules**

Fed. R. Civ. P. 56(a) .......... 7

Fed. R. Crim. P. 6(e) .......... 18

**Regulations**

28 C.F.R. § 16.21(a)(2) .......... 3, 8, 9

28 C.F.R. § 16.21(c) .......... 10

28 C.F.R. § 16.22(c) .......... 3, 20

28 C.F.R. § 16.24(c) .......... 3, 20

28 C.F.R. § 16.26(b)(1) .......... *passim*

28 C.F.R. § 16.26(b)(2) .......... 21

28 C.F.R. § 16.26(b)(3) .......... 21

28 C.F.R. § 16.26(b)(4) .......... 19, 20

28 C.F.R. § 16.26(b)(4) .......... 21

28 C.F.R. § 16.26(b)(5) ... *passim*

28 C.F.R. § 16.26(c) ... 21, 22

28 C.F.R. § 16.27 ... 3

28 C.F.R. § 16.28 ... 3

28 C.F.R. § 16.29 ... 3

OMB Guidelines,
40 Fed. Reg. 28,948 (July 9, 1975) ... 11

Privacy Act of 1974; Modified System of Records,
53 Fed. Reg. 1861-02 ... 11

Privacy Act of 1974; System of Records,
72 Fed. Reg. 44182-01 ... 11

Privacy Act of 1974; Systems of Records,
52 Fed. Reg. 47182-01 ... 11

Report Under Public Law 119-38,
91 Fed. Reg. 55356 (August 27, 2026)... ...12

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ... 9

Dep't of Just., Epstein Library, Justice.gov (last updated Sep. 11, 2026) ... 2, 4

Elaine Mallon, *Todd Blanche says 'no closed investgations' in Epstein case, vows DOJ will pursue new suspects*, Fox News (July 15, 2026), https://www.foxnews.com/politics/todd-blanche-says-no-closed-investigations-epstein-case-vows-doj-pursue-new-suspects ... 19

Letter from Todd Blanche to Senate and House Judiciary Committees, Re: Epstein Files Transparency Act – Section 3 Report to Congress (Feb. 14, 2026), https://www.justice.gov/opa/media/1434856/dl?inline ... 2

## INTRODUCTION

The State of New Mexico challenges the Department of Justice's (DOJ) decision, committed to agency discretion by law, to decline to produce the full, unredacted Epstein Files. New Mexico requested these files in a *Touhy* request which sought *all* of the millions of pages in the Epstein Files and *any* related materials—not just records pertaining to events in New Mexico. DOJ declined the *Touhy* request objecting to its overbreadth, its inevitable violation of statutes and protective orders, and its interference with law enforcement investigative efforts. New Mexico claims DOJ's failure to accede to their demands was arbitrary and capricious, not in accordance with the law, and in excess of statutory authority under the Administrative Procedure Act (APA).

The Court should dismiss New Mexico's Complaint or, in the alternative, it should grant DOJ's motion for summary judgment. As an initial matter, law-enforcement to law-enforcement information sharing is a matter of discretion not subject to judicial review. Even if the Court were to turn to the merits, New Mexico's Complaint shows DOJ considered the *Touhy* request under its regulatory framework and determined disclosure was unwarranted. Finally, the Court should reject New Mexico's alternative argument that DOJ unlawfully withheld acting for the same reasons.

## BACKGROUND

### I. STATUTORY AND REGULATORY BACKGROUND

#### a. The Epstein Files Transparency Act

On November 19, 2025, Congress enacted the Epstein Files Transparency Act (EFTA), Pub. L. No. 119-38, 139 Stat. 656, with nearly unanimous bipartisan support. The EFTA directed the Attorney General to make all unclassified records, documents, communications, and investigative materials in DOJ's possession publicly available. *See id*. § 2(a). The EFTA granted the Attorney General discretion to withhold or redact certain categories of information, *id*. § 2(c)(1)(A)-(E), subject to written justification, *id*. § (2)(c)(2). The EFTA also mandated certain reporting

requirements to Congress and the public. *Id*. §§ (2–3). DOJ made multiple disclosures pursuant to the EFTA on December 19 and December 23, 2025, followed by its most recent release on January 30, 2026. *See* Compl. ¶ 38. DOJ issued a summary identifying the categories of records that were withheld and explained the legal bases for any redactions. *See* Letter from Todd Blanche to Senate and House Judiciary Committees, *Re: Epstein Files Transparency Act – Section 3 Report to Congress* (Feb. 14, 2026), https://www.justice.gov/opa/media/1434856/dl?inline. DOJ also launched a searchable database containing millions of declassified records related to Jeffrey Epstein—the Epstein Library—on December 19, 2025. *See* DOJ, Epstein Library, Justice.gov (last updated Sep. 11, 2026).

**b. The Privacy Act**

The Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 (Dec. 31, 1974), codified at 5 U.S.C. § 552a (2018), is the principal law governing the handling of personal information in the federal government. Enacted in the wake of the Watergate and the Counterintelligence Program (COINTELPRO) scandals involving illegal surveillance on opposition political parties and individuals deemed to be "subversive," the Privacy Act sought to restore trust in government and to address what at the time was seen as an existential threat to American democracy. *See* S. Comm. on Gov't. Operations & H.R. Comm. on Gov't. Operations, 94th Cong., 2d Sess., Legislative History of the Privacy Act of 1974 S. 3418 (Public Law 93-579): Source Book on Privacy at 4 (Comm. Print 1976). The Privacy Act was later modified by the Computer Matching and Privacy Protection Act of 1988, Pub. L. No. 100-503, 102 Stat. 2507, extending the Privacy Act's protections to computer-matching activities by agencies, with requirements for certain additional internal agency procedures.

### c. DOJ's *Touhy* Regulations

The Housekeeping statute, 5 U.S.C. § 301, provides that "[t]he head of an Executive department . . . may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property." Pursuant to the statute the Attorney General has promulgated regulations governing requests for official information in state or federal proceedings. *See generally*, 28 C.F.R. §§ 16.21–.29. The Supreme Court upheld the legality of these regulations in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), and thus the regulations are commonly known as "Touhy" regulations. *Id.* at 468-69. "Agencies may direct individuals seeking records to 'adhere to' these '*Touhy* regulations.'" *Pretrial Servs. Agency for D.C. v. Sanders*, 780 F. Supp. 3d 286, 296 (D.D.C. 2025) (citation omitted), *appeal filed*, No. 25-5194 (D.C. Cir. May 28, 2025).

DOJ's *Touhy* regulations provide that they apply "[i]n all federal and state proceedings in which the United States is not a party[,]" 28 C.F.R. § 16.21(a)(2), and generally bar disclosure. *Id.* § 16.22(a). DOJ may authorize disclosure if there is no objection from the government component that created the requested material (hereafter "the originating component") and if disclosure is appropriate considering, in relevant part, the following factors: (1) whether disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose; (2) whether disclosure is appropriate under the relevant substantive law concerning privilege; (3) whether disclosure would violate a statute; (4) whether disclosure would reveal a confidential source or informant; and (5) whether disclosure would reveal investigatory records compiled for law enforcement purposes and so would interfere with enforcement proceedings or disclose investigative techniques. *Id*. § 16.26(a)(b). Where—as here—DOJ is the originating component, it may unilaterally determine the appropriateness of disclosure. *Id*. § 16.24(a). If DOJ determines

disclosure is not appropriate, it may instruct its attorneys not to comply with a *Touhy* request pending review by the Attorney General. *Id*. § 16.24(f)(g).

## II. FACTUAL AND PROCEDURAL BACKGROUND

New Mexico began its investigation into potential crimes at Jeffrey Epstein's Zorro Ranch located in Santa Fe County, New Mexico, in February 2019. Compl. ¶ 24. DOJ declined New Mexico's initial offer to share information in mid-May 2019, *id*. ¶¶ 25–26, stating that it was "not in a position to share any information relating [to the Epstein investigation] or to discuss possible [law enforcement] coordination." Ex.[1] 3 at 17. New Mexico agreed to "cease any investigation into sex trafficking and share whatever [it] had gathered . . . with [DOJ through the Southern District of New York US Attorney's Office (SDNY)]" during a subsequent phone call on July 23, 2019. Compl. ¶ 27. Handwritten notes, ostensibly from that phone call, indicate that New Mexico agreed to "refer all matters to SDNY[,]" whereas "SDNY will refer any state-related matters to New Mexico at [the] conclusion of the SDNY case." DOJ, Epstein Library, EFTA01681971, https://www.justice.gov/epstein/files/DataSet%2010/EFTA01681971.pdf (last visited Oct. 1, 2026); *see also* Compl. ¶ 28 n.4. New Mexico provided DOJ with its investigative file relating to Epstein's activities within the State on September 17, 2019. Compl. ¶ 29. DOJ reiterated it would "reach out [to New Mexico] should [it] learn of viable state-level charges that are not already covered by [the] federal investigation[]" following the arrest of Ghislaine Maxwell. Ex. 5 at 2. To date, DOJ has not referred any state-related matters to New Mexico concerning Epstein or his co-conspirators. Compl. ¶ 42.

New Mexico reopened its investigation into potential criminal activity at Zorro Ranch in February 2026. *Id*. ¶ 44. On February 13, 2026, New Mexico sent DOJ a letter requesting

[1] Unless otherwise indicated, all citations to exhibits refer to Plaintiffs' exhibits attached to the Complaint.

immediate production of full, unredacted copies of all documents pertaining to an allegation that two female sex-trafficking victims were buried at Zorro Ranch. *Id.* ¶ 47. New Mexico widened the scope of its request in a March 13, 2026, letter requesting general access to unredacted materials relating to Zorro Ranch. *Id.* ¶ 48. On April 1, 2026, New Mexico spoke with DOJ's Associate Deputy Attorney General, Diego Pestana, regarding its request. *Id.* ¶ 50. Mr. Pestana requested that New Mexico submit a formal *Touhy* request to the federal district of New Mexico's U.S. Attorney's Office (DNM). *Id.* New Mexico's special counsel, Sean P. Sullivan, sent a *Touhy* request on May 3, 2026, requesting "access to unredacted documents collected, assembled, and prepared in connection with investigations and prosecutions of Epstein and his associates . . . as well as any relevant nonprivileged unreleased files," *id.* ¶¶ 53–54 (citation modified). The *Touhy* request stated that New Mexico "is currently investigating potential felony offenses under [its] state criminal code," *id.* ¶ 54 (citation modified). It also highlighted nine records as exemplary of "patterns and practices of criminal behavior by Epstein, Maxwell, and their associates occurring in New Mexico and at Zorro Ranch. *Id.* ¶ 55. New Mexico requested this information to "identify potential witnesses . . .; identify potential unindicted perpetrators; verify travel movements; and conduct a more thorough examination of criminal behavior in New Mexico." *Id.* ¶ 59. New Mexico requested DOJ respond by May 11, 2026. *Id.* ¶ 54.

On May 29, 2026, after receiving no response from DOJ, New Mexico sent a letter to then-Acting Attorney General Todd Blanche and Mr. Pestana, again requesting access to the unredacted records. *Id.* ¶ 64. New Mexico sent follow-up letters on June 30, 2026, and July 14, 2026. *Id.* ¶¶ 69, 71. New Mexico received DOJ's response its original[2] *Touhy* request on July 14, 2026, via

[2] The Complaint states that DOJ responded to New Mexico's "March 3, 2026, *Touhy* request." Compl. ¶ 72. This seems to refer to New Mexico's original *Touhy* request of May 3, 2026. Compl. ¶ 53.

DNM. *Id.* ¶ 72. In that response, DOJ raised three primary objections to the request: (1) producing the millions of unredacted pages maintained in the Epstein Library is overbroad, unduly burdensome, and not reasonably related to the needs of the case since there is no pending case and the requests are not targeted to any particular fact or issue; (2) DOJ regulations prohibit disclosure if doing so would violate a statute or a rule of procedure—here, the protective orders entered in Epstein and Maxwell's criminal cases and the Privacy Act; and (3) disclosure would interfere with enforcement proceedings, disclose investigative techniques, or violate a privilege. Ex. 3 at 5–6.[3] DOJ reaffirmed its position in an email from Sean Buckley, Deputy United States Attorney for SDNY, on July 31, 2026. Compl. ¶ 75.

Plaintiffs filed suit on August 5, 2026, asserting two counts under the APA. *Id.* ¶¶ 94–143. Count I alleges DOJ's refusal to provide unredacted Epstein Files in response to its *Touhy* request is "arbitrary and capricious, an abuse of discretion, and not in accordance with the law[]" because their objections "are not permissible grounds for rejecting *Touhy* requests under statute or agency regulations." *Id.* ¶¶ 96–97. Count II alleges, if the Court were to conclude DOJ's refusal was not final agency action under the APA, or if DOJ responds it is still considering the *Touhy* request (which it does not argue, *see infra* at 22), *id.* ¶ 135, DOJ unlawfully withheld or unreasonably delayed disclosure. *Id.* ¶¶ 131. New Mexico requests that the Court direct DOJ "to set aside [their] denial of . . . New Mexico's *Touhy* Request[,]" "evaluate the request in accordance . . . [DOJ's] *Touhy* regulations[,]" and to compel DOJ "to take all agency action required by law . . . including but not limited to producing" all unredacted Epstein Files and related materials. *Id.*, Prayer for Relief (E–F); *see also id.* ¶ 38 n.9.

---

[3] Due to Exhibit 3 containing multiple documents with individual pagination, Defendants use PACER's blue pagination in the top-right corner.

## LEGAL STANDARD

Under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's subject-matter jurisdiction. *See, e.g.*, *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). If the plaintiff is unable to do so, the Court must dismiss the action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Under a Rule 12(b)(1) motion, a court may consider material beyond the allegations in the complaint. *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005); *Transp. Trades Dep't, AFL-CIO v. Nat'l Mediation Bd.*, 530 F. Supp. 3d 64, 69 (D.D.C. 2021). "Where both standing and subject matter jurisdiction are at issue," the "court may inquire into either and, finding it lacking, dismiss the matter without reaching the other." *Moms Against Mercury v. FDA*, 483 F.3d 824, 826 (D.C. Cir. 2007).

When a defendant files a motion to dismiss a complaint for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In considering a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the Court is not confined to the letter of the complaint and may "consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. District of Columbia Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000). This is tied to the Court's "independent duty to assure [itself] that the petitioners and their claims satisfy the requirements of Article III." *TikTok Inc. v. Garland*, 122 F.4th 930, 947 (D.C. Cir. 2024).

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).

A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Id*. Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of their pleading but must instead establish more than "the mere existence of a scintilla of evidence" in support of their position. *Id*. Thus, summary judgment is appropriate if the non-moving party fails to offer "evidence on which the jury could reasonably find for the [nonmovant]." *Id*. When determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

## ARGUMENT

The Court should dismiss New Mexico's Complaint. The Court cannot consider New Mexico's claims because the decision to deny New Mexico's *Touhy* request is committed to agency discretion by law. In the alternative, should the Court turn to the merits (which it should not), it should grant summary judgment in DOJ's favor because New Mexico's Complaint shows DOJ properly considered, and rejected, the request under its *Touhy* regulations. Finally, the Court should reject New Mexico's alternative argument that DOJ has unlawfully withheld acting for the same reasons.

### I. The Court Should Dismiss New Mexico's Complaint Under Rule 12(b)(1) Because Denying New Mexico's *Touhy* Request is Committed to Agency Discretion by Law.

Although the APA creates a "strong presumption favoring judicial review of administrative action[,]" *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (citation omitted), it explicitly excludes from judicial review those agency actions that are "committed to agency

discretion by law." 5 U.S.C. § 701(a)(2). Action is committed to agency discretion "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). To determine "whether a matter has been committed solely to agency discretion, [courts] consider both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Sec'y of Lab. v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006) (citation omitted). Here, DOJ's *Touhy* regulations, the Privacy Act, and the EFTA all show DOJ's denial of the *Touhy* request is committed to agency discretion.

**a. DOJ's *Touhy* regulations commit New Mexico's *Touhy* request to agency discretion here.**

DOJ's *Touhy* regulations reflect that, absent an underlying criminal proceeding, decisions about law-enforcement information sharing are committed to the agency's discretion. *See* 28 C.F.R. 16.21(c). The regulations are triggered by a request for official information out of "federal and state proceedings[.]" 28 C.F.R. § 16.21(a)(2). A "proceeding" includes all acts and events between the time of the commencement of a lawsuit and the entry of judgment. *Proceeding*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also id.*, *Criminal Proceeding* ("A judicial hearing, session, or prosecution in which a court adjudicates whether a person has committed a crime or, having already fixed guilt, decides on the offender's punishment; a criminal hearing or trial."). Here, New Mexico seeks unredacted Epstein Files to investigate "potential felony offenses under New Mexico's state criminal code," Compl. ¶ 54 (citation modified). But an "investigation" is distinct from a "proceeding." New Mexico's investigation is not a "proceeding" because it occurs before the commencement of a lawsuit. *See Proceeding,* BLACK'S LAW DICTIONARY (12th ed. 2024).

This distinction has teeth. In the administrative context, the D.C. Circuit has held "[f]or an investigation to be considered a proceeding [] [the action] must be more than a mere police investigation." *United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994). Crucial to the D.C. Circuit's analysis was that proceeding necessarily exercises coercive power, usually by issuing "subpoenas or warrants[,]" *id.*, neither of which have been properly issued here as there is no criminal proceeding. *See also Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007) (explaining subpoenas are normally the proper mechanism for requesting agency information in a civil or criminal case). The Ninth Circuit has similarly opined that the term "official proceeding" as defined in 18 U.S.C. § 1512(c)—tampering with a witness, victim, or an informant—does not include an FBI investigation because its plain meaning and broader statutory context pointed to a narrower definition. *United States v. Ermoian*, 752 F.3d 1165, 1169–72 (9th Cir. 2013). Same here, DOJ's *Touhy* regulations apply in "proceedings in which the United States is not a party," 28 C.F.R. § 16.21(a)(2). They further specify DOJ may share information outside the formal administrative process, *id.* § 16.21(c); *see also infra* at 10. These distinctions connote that "proceeding," as used in DOJ's *Touhy* regulations, means formal judicial proceedings—not criminal investigations. Accordingly, DOJ's *Touhy* regulations are not implicated here in the first instance.

Nevertheless, the *Touhy* regulations permit "appropriate" disclosure to state law enforcement even in the absence of a formal proceeding. 28 C.F.R. § 16.21(c). What qualifies as "appropriate," however, lies solely within DOJ's discretion, as "the term 'appropriate' clearly denotes discretion." *Illinois v. Interstate Com. Comm'n*, 713 F.2d 305, 310 (7th Cir. 1983). New Mexico likewise acknowledges that disclosure under this provision is "voluntary." *See* Compl. ¶ 90. The APA cannot compel voluntary action; it authorizes courts to require agency action that is "legally *required*." *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (emphasis in

original). New Mexico, therefore, cannot use the APA to compel DOJ to exercise a disclosure authority that the regulations make purely discretionary. New Mexico's cases support this conclusion in the wider law-enforcement information sharing context. In *ACI Construction, LLC v. United States*, the court opined the Executive Branch has the authority to implement and enforce obligations relating to inter-government authorities and the court "cannot add requirements that neither the Constitution nor Congress have required." No. 1:19-CV-00054-JNP-JCB, 2020 WL 10317460, at *2 (D. Utah July 7, 2020); *see also* Compl. ¶ 116. At best, New Mexico's Complaint alleges DOJ may exercise its discretion to grant the *Touhy* request, *see* Compl. ¶¶ 107–122, but it ignores that argument's corollary—that DOJ may use that discretion to *deny* the request. Thus, New Mexico cannot invoke the APA to force DOJ to exercise a discretionary disclosure authority.

**b. Neither the Privacy Act nor the EFTA contain manageable standards by which to judge DOJ's use of discretion.**

The Privacy Act and the EFTA confirm that New Mexico's *Touhy* request is committed to agency discretion by law. Start with the Privacy Act; it prohibits disclosing records without the written permission of the individual to whom the record pertains subject to certain exceptions. *See* 5 U.S.C. § 552a(b). It contains no language mandating disclosure should an exception apply, *see generally*, 5 U.S.C. § 552a(b). Office of Monetary Budget (OMB) regulations separately state that the Privacy Act's exceptions permit, but do not mandate, disclosure thus giving agencies discretion when considering a request. *See* OMB Guidelines, 40 Fed. Reg. 28,948, 28,953 (July 9, 1975). This discretion extends to New Mexico's identified exception—information sharing between law enforcement agencies. *Id.*; *see also* Compl. ¶ 107 (citing 5 U.S.C. §552a(b)(7)). The Privacy Act's grant of discretion permitting, but not mandating, disclosure means the Act does not contain meaningful standards by which to judge DOJ's decision to refuse New Mexico's *Touhy* request. *See Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011).

New Mexico's argument that the Privacy Act allows for routine uses. *See* Compl. ¶¶ 109–110, does not change this analysis. New Mexico's identified routine uses allow officials to use their discretion when disclosing certain materials, but they do not mandate disclosure. *See* Privacy Act of 1974; Systems of Records, 52 Fed. Reg. 47182-01, 47188 ("Dissemination of a record *may* be made to . . . state . . . agency . . .") (emphasis added); Privacy Act of 1974; Modified System of Records, 53 Fed. Reg. 1861-02 (same); Privacy Act of 1974; System of Records, 72 Fed. Reg. 44182-01 (same); *see also Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016) ("the word 'may' clearly connotes discretion."). Thus, the Privacy Act contains no mechanisms by which to judge DOJ's use of discretion.

Move onto the EFTA, which similarly does not contain any manageable standards. First, it does not even contemplate information sharing for law enforcement purposes. *See generally*, EFTA. Second, though the EFTA required DOJ to produce documentation relating to Epstein and Maxwell, it simultaneously granted DOJ discretion to redact materials so long as redactions were accompanied by a written justification or summary and were not withheld to prevent "embarrassment, reputational harm, or political sensitivity" to "any government official, public figure, or foreign dignitary." *Id.* § 2(b), (c) ("The Attorney general *may* withhold or redact [] segregable portions of records…") (emphasis added). Third, the EFTA included two public reporting requirements upon completion of the process. First, the Attorney General was required, within 14 days of completion, to submit a report to Congress listing "[a]ll categories of records released and withheld[]" and "[a] summary of redactions made, including legal basis." *Id.* § 3. Second, he was required to publish a notice in the Federal Register, *id.* § 2, which he did on August 27, 2026. Report Under Public Law 119-38, 91 Fed. Reg. 55356 (Aug. 27, 2026). Courts have held similar language creates an exclusive retention of a remedy vested solely in Congress, *see*

*Armstrong v. Exceptional Child Ctr., Inc.*, U.S. 320, 327–28 (2015). That Representatives Merkley and Lujan have introduced a second Epstein Files Transparency Act to give States standing to sue for the release of the Epstein Files reinforces the argument that the EFTA limited any remedy exclusively to Congress. *See* Epstein Files Transparency Act II, S. 5005, 119th Cong. (July 15, 2026). The grant of agency discretion, along with the implicit exclusive remedy, show that Congress did not intend to limit DOJ's discretion when considering requests for unredacted Epstein Files. In sum, New Mexico's APA claims fail since the decision to grant (or withhold) information in the absence of a proceeding is committed to agency discretion by law. *See* 5 U.S.C. §§ 701(a)(2); *Heckler*, 470 U.S. at 828; *see also* 5 U.S.C. § 551(13).

## II. The Court Should Grant Summary Judgment in Favor of DOJ Because Denying New Mexico's *Touhy* Request Was Not Arbitrary or Capricious.

Should the Court proceed to the merits, the agency's response to New Mexico's request demonstrates that denying the *Touhy* request was not arbitrary or capricious. APA review is narrow, and courts presume denial of a *Touhy* request is valid unless the requestor can demonstrate that "the government has refused production in an arbitrary, capricious, or otherwise unlawful manner." *Agility Pub. Warehousing Co. K.S.C.P. v. U.S. Dep't of Def.*, 246 F. Supp. 3d 34, 41 (D.D.C. 2017) (citation omitted). The Court "must consider whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," but may not "substitute its judgment for that of the agency," *id*. at 42 (citation modified). Despite New Mexico's allegation that "[n]otably absent for all [DOJ's] responses . . . is any consideration of the factors its own *Touhy* regulations require it apply…[,]" Compl. ¶ 123, DOJ clearly considered the relevant factors and determined that disclosure was unwarranted. *See* Ex. 3 at 5–6.

Specifically, it determined: (1) disclosure would violate a statute or rule of procedure, *id*. (citing 28 C.F.R. § 16.26(b)(1))—namely, the protective orders in *United States v. Maxwell* and

*United States v. Epstein* (hereafter the "Protective Orders") and the Privacy Act; (2) disclosure may interfere with law enforcement or violate privileges including the attorney-client, work product, and law enforcement privileges; and (3) disclosure of the millions of pages in the Epstein Files is "overbroad, unduly burdensome, and not reasonably related to the needs of the case since [New Mexico] has no pending case and the requests are not targeted to any particular fact or issue." *Id*. at 5 (citing 28 C.F.R. § 16.26(b)(1, 5). The Court's analysis can end there. *See FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) (explaining, under the arbitrary and capricious standard, courts "simply ensure[] that the agency has acted within a zone of reasonableness," and "may not substitute its own policy judgment for that of the agency."). Nevertheless, a closer review of DOJ's reasoning shows disclosure is unwarranted.

**a. DOJ properly rejected New Mexico's *Touhy* request under 28 C.F.R. § 16.26(b)(1) because disclosure would violate the EFTA and the Protective Orders.**

The EFTA permitted DOJ to redact "segregable portions of records that—contain personally identifiable information of victims . . . and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;" "depict or contain child sexual abuse materials[;]" "would jeopardize an active federal investigation[;]" "depict or contain images of death . . . or injury[;]" or "contain information . . . established by an Executive order to be kept secret in the interest of national defense or foreign policy[.]" EFTA § 2(c). It did not permit disclosure of unredacted materials. *Id*. In fact, New Mexico excoriates DOJ's previous accidental disclosure of unredacted victim personal information. Compl. ¶ 5. Now, New Mexico seeks that same material. *See* Ex. 12 at 1, 3.

The Protective Orders in the Epstein and Maxwell criminal prosecutions confirm that DOJ's redactions are necessary. On November 25, 2025, a victims' attorney wrote the *Epstein* court that disclosure under the EFTA "CANNOT come at the expense of the privacy, safety, and

protection of sexual abuse and sex trafficking victims…" Decision & Order at 3, *United States v. Epstein*, Case No. 1:19-cr-00490 (S.D.N.Y. Dec. 10, 2025), ECF No. 92 (emphasis in original) (attached hereto as Exhibit A). On December 2, 2025, Annie Farmer, a victim who testified under her full name at Maxwell's trial, filed a letter through counsel stating that she supports the unsealing and release of grand jury and discovery materials in Maxwell's case *subject to redactions for victims' personal information*. *See* Op. and Order at 10, *United States v. Maxwell*, Case No. 1:20-cv-00330 (S.D.N.Y. Dec. 9, 2025), ECF No. 820 (attached hereto as Exhibit B). In a letter dated "November 25, 2025, counsel for a consortium of victims of Epstein and Maxwell faulted DOJ for having failed to redact victims' names in documents DOJ provided to the House of Representatives Oversight Committee and which that Committee later published[]" and "asked the [*Maxwell*] Court to assure that DOJ adequately redact victims' personal information in any materials that the [*Maxwell*] Court authorizes DOJ to release pursuant to the Act." *Id*. at 11. In another letter "dated December 3, 2025, counsel for a victim's family member . . . asked that all personally identifiable information regarding the family member be redacted in any materials made public pursuant to the Act." *Id*.

With these considerations in mind the *Maxwell* Court modified the Protective Order to add

> Nothing in this Protective Order shall prohibit the Government from publicly releasing materials whose disclosure is required by the Epstein Files Transparency Act. The restrictions of this Protective Order, however, remain in place with respect to the segregable portions of records that 'contain personally identifiable information of victims or victims' personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.' Epstein Files Transparency Act § 2(c)(1)(A).

*Id*. at 18. The *Maxwell* Court additionally modified the Protective Order, with the express purpose that "DOJ rigorously guards against releasing protected victim information[,]" *id*., by requiring the United States Attorney for SDNY personally certify that such material has been rigorously

reviewed for compliance with the EFTA. *Id*. at 21. The *Epstein* Court similarly granted DOJ's motion to modify the protective order subject to "the unequivocal right of Epstein victims to have their identity and privacy protected." Ex. A at 1 (citing Ex. B). Clearly, the Protective Orders do not allow DOJ to disclose New Mexico's requested material. This, at a bare minimum, makes DOJ's rational not arbitrary or capricious.

New Mexico mounts three arguments in rebuttal. First, the Protective Orders only prohibit public disclosure—not disclosure to New Mexico for law enforcement purposes. Compl. ¶¶ 114–15. Second, DOJ aggressively preserves its ability to share information with law enforcement agencies in other contexts. *Id*. ¶¶ 116–18. Third, DOJ has already released the unredacted Epstein Files to Congress. *Id*. ¶¶ 119–22.

Begin with the first argument. As explained below, "disclosure," under the Protective Orders,[4] includes information sharing with law enforcement. *See infra* at 16–18. Thus, a disclosure, even for law enforcement purposes, would violate the Protective Orders' clear mandate not to disclose victims' personal information. With respect to the second argument: a smattering of cases involving routine tax disputes, *see ACI Constr., LLC*, 2020 WL 10317460 at *1, hardly stand for the proposition that DOJ has the same interest in sharing unredacted Epstein Files with law enforcement agencies. In any event, those cases show that DOJ has *discretion* to share (and

---

[4] The Protective Orders in the *Maxwell* and *Epstein* cases did not define the term "public disclosure." *See generally*, Ex. A–B. Nevertheless, principles of statutory interpretation demonstrate those courts intended "public disclosure" to carry its accumulated meaning under the law. *See Neder v. United States*, 527 U.S. 1, 21 (1999) ("It is a well-established rule of construction that '"[w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms."') (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992)); *see also Sackett v. EPA*, 598 U.S. 651, 683 (2023)) ("We will infer that a term was 'transplanted from another legal source' ... only when a term's meaning was 'well-settled' before the transplantation."') (quoting *Kemp v. United States*, 596 U.S. 528, 539 (2022)).

withhold) information; discretion that this Court cannot review. *See supra* at 8–12. And, finally, as to the third argument: DOJ may, in its discretion, disclose information "to either House of Congress," 5 U.S.C. § 552a(b)(9). That DOJ decided disclosure to Congress was appropriate whereas disclosure to New Mexico was not is a decision DOJ was entitled to make subject solely to its discretion. *See supra* at 8–12. New Mexico's arguments that the EFTA or Protective Orders do not prevent disclosure here are, therefore, unavailing.

**b. DOJ properly rejected New Mexico's *Touhy* request under 28 C.F.R. § 16.26(b)(1) because disclosure would violate the Privacy Act and other statutes.**

The Privacy Act states "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains [subject to exceptions]." 5 U.S.C. § 552a(b). A "disclosure" can be by any means of communication—written, oral, electronic, or mechanical—and includes granting access to the record. *See* OMB Guidelines, 40 Fed. Reg. at 28,953. This definition encapsulates New Mexico's *Touhy* request which seeks access to all unredacted Epstein Files and related materials. Compl., Prayer for Relief (E–F); *see also id.* ¶ 38 n.9. New Mexico identifies two exceptions to the Privacy Act—routine use, 5 U.S.C. § 552a(b)(3); and, law enforcement, *id.* § 552a(b)(7)—to argue disclosure is appropriate here. *See* Compl. ¶¶ 107–11. As an initial matter, each of the Privacy Act's exceptions provide DOJ with discretionary authority to disclose records falling within their ambit—they do not require disclosure. *See supra* at 10–12. Nevertheless, disclosure here would violate the Privacy Act and other federal statutes.

As an initial matter, the law enforcement exception allows disclosure to a State agency for the purposes of criminal law enforcement if the head of the agency makes a written request "specifying the particular portion desired and the law enforcement activity for which the record is

sought[.]" 5 U.S.C. § 552a(b)(7). Granting New Mexico's *Touhy* request would violate this exception in two ways. First, the head of New Mexico's Department of Justice (Mr. Raul Torrez, Compl. ¶ 108) did not submit the *Touhy* request—special counsel Sean P. Sullivan did. *Id.* ¶ 53; *see also* Ex. 14 at 6. Courts have generally enforced the requirement that the agency head must make the request. *See Doe v. DiGenova*, 779 F.2d 74, 85 (D.C. Cir. 1985) (concluding that the Veteran Affair's disclosure of veteran's medical records in response to federal grand jury subpoena was not authorized because federal grand jury subpoena is issued by federal prosecutors, not head of an agency). Second, New Mexico's *Touhy* request does not specify a particular portion of the Epstein Files but maintains it requires all "redacted materials contained in the [] 'Epstein Library' . . . along with any relevant non-privileged unreleased files." Ex. 14 at 2. The law enforcement exception's language that requestors must "specify[] the particular portion desired" does not permit such wide-ranging disclosure. *See* 5 U.S.C. § 552a(b)(7)

Disclosure would violate other statutes as well. For example, the Child Victims' and Child Witnesses' Rights Act, 18 U.S.C. § 3509(d), prohibits disclosing child sexual abuse materials unless disclosure is made pursuant to an ongoing legal proceeding. *Id.* § 3509(d)(1)(i). As previously noted, there is no ongoing legal proceeding here. *See* Compl. ¶¶ 54–59. The Bank Secrecy Act, 31 U.S.C. § 5319 bars public disclosure of certain financial reports including Currency Transaction Reports, *see id.* § 5313, Suspicious Activity Reports, *see id.* § 5314, and reports on cross-border monetary instruments, *see id.* § 5316. The Pen Register Act, 18 U.S.C. § 3123(d) bars disclosure of pen registers and trap and trace devices without a court order. Fed. R. Crim. P. 6(e) bars disclosure of grand jury proceedings unless disclosure is necessary to assist in enforcing federal criminal law or a court orders disclosure. *see also* EFTA § 2(c) ("The Attorney general may withhold . . . records that [] contain personally identifiable information of victims or

victims' personal and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy"). Disclosure of unredacted Epstein Files implicates each of these statutes. Granting New Mexico's *Touhy* request would inevitably lead to a host of statutory violations and DOJ rightly determined this warranted denying New Mexico's *Touhy* request. *See* Ex. 3 at 5–6; *see also* 28 C.F.R. § 16.26(b)(1).

**c. DOJ properly rejected New Mexico's *Touhy* request under 28 C.F.R. § 16.26(b)(5) because disclosure would negatively impact law enforcement and violate privileges.**

DOJ may deny a *Touhy* request if disclosure "would reveal investigatory records compiled for law enforcement purposes and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired[.]" 28 C.F.R. § 16.26(b)(5). Releasing unredacted Epstein Files would reveal case notes, analysis, and communications containing witness identities and investigative strategies, thus undermining the effectiveness of those strategies and deterring future informants. *See* Ex. 3 at 5–6. These materials are also shielded by various privileges, including the work product, attorney-client, and law enforcement privileges. *See id*. DOJ explicitly invoked these privileges when denying the *Touhy* request. *See id*. To the extent the Court views these assertions as generalized, *see, e.g.*, *A.N.S.W.E.R. Coal. v. Jewell*, 292 F.R.D. 44, 50 (D.D.C. 2013) (explaining the law enforcement privilege requires a "detailed explanation of the information withheld and the privilege's applicability"); *United States v. Aziz*, No. 24-CR-00380 (NCM), 2026 WL 2123621, at *5 (E.D.N.Y. July 20, 2026) (holding the same for withholdings pursuant to 28 C.F.R. § 16.26(b)(5)), that is a product of New Mexico's overbroad request which demanded all of the millions of unredacted pages in Epstein Files. *See* Ex. 12 at 2. Logging an individualized response for each file would be unduly burdensome and not reasonably related to the needs of New Mexico's case

since there is no pending case and the *Touhy* request was not targeted to any particular fact or issue. *See* Ex. 3 at 5.

New Mexico may argue that the law enforcement exception does not apply because DOJ "is not proceeding with any Epstein-related prosecutions at this time[,]" Compl. ¶ 41 (citation omitted). But that is flatly wrong. Then Acting Attorney General, Todd Blanche, told senators that DOJ will "indict and prosecute out of the Epstein files" if new information becomes available. Elaine Mallon, *Todd Blanche says 'no closed investigations' in Epstein case, vows DOJ will pursue new suspects*, FOX NEWS (July 15, 2026), https://www.foxnews.com/politics/todd-blanche-says-no-closed-investigations-epstein-case-vows-doj-pursue-new-suspects. DOJ's willingness to potentially pursue further Epstein investigations further strengthens its rationale that disclosure here would "interfere with enforcement proceedings or disclose investigative techniques[.]" 28 C.F.R. § 16.26(b)(5).

New Mexico's *Touhy* request also implicates other government privileges besides the law enforcement, work product, and attorney-client privileges. For example, the informant privilege allows the government to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. *United States v. Martinez*, 764 F. Supp. 2d 166, 168 (D.D.C. 2011); *see also* 28 C.F.R. § 16.26(b)(4). In considering this privilege, courts balance "the public interest . . . taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id*. New Mexico faces "a heavy burden to establish that the identity of an informant is necessary" under this privilege. *Id*. Here, the balance favors DOJ. Public interest is best served by keeping personal information redacted. *See supra* at 13–16. Indeed, respecting victim privacy was one of the essential goals of the EFTA. *See, e.g.*, EFTA § 2(c). The cumulative force of the law

enforcement, work product, and attorney-client, and informant privileges makes clear that DOJ is required to withhold the materials New Mexico seeks.

**d. DOJ properly rejected New Mexico's *Touhy* request under 28 C.F.R. § 16.22(c) and § 16.24(c) because the request is overbroad.**

DOJ's *Touhy* regulations limit disclosure to materials relevant to the underlying proceeding. 28 C.F.R. § 16.22(c); *see also id*. § 16.24(c) (requiring responsible officials to "seek to limit the demand to information . . . which would not be inconsistent with the considerations specified in § 16.26 of this part."). New Mexico does not even attempt to narrow its request to relevant materials. It seeks not only all millions of pages of unredacted Epstein Files, Compl., Ex. 14 at 2–3, only 0.6%[5] of which "appear to indicate activity in or tied to New Mexico that warrants further investigation," *id*. at 3, but also any other materials in DOJ's possession. Compl. ¶ 38 n.9. Courts within the District of Columbia have explained that similar requests for information are overbroad because they seek evidence irrelevant to the underlying claim, *see, e.g.*, *Food Lion, Inc. v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1013 (D.C. Cir. 1997), or because the request is so broad as to be "virtually incomprehensible[.]" *Freedom Watch, Inc. v. CIA*, 895 F. Supp. 2d 221, 228-29 (D.D.C. 2012). New Mexico's request meets both criteria. It does not even attempt to allege that all of the millions of pages in the Epstein Files are relevant to its investigation. Its request for materials outside the Epstein Files similarly begs the question, "what materials *would* satisfy the request?" Thus, like the courts in *Food Lion* and *Freedom Watch*,

---

[5] There are over 3 million pages contained within the Epstein Files. *See, e.g.*, Ex. 1 at 3. New Mexico alleges "[t]he Epstein Files include over 13,000 references to Zorro Ranch and 5,000 references to New Mexico as locations where victims were trafficked, groomed, and assaulted." Compl. ¶ 23. Assuming no page in the Epstein Files simultaneously references Zorro Ranch or New Mexico, and that no page references either twice, the sum of these references totals 18,000. This figure represents 0.6% of the approximately 3 million pages contained within the Epstein Files ($.6 = \frac{18,000}{3,000,000} \times 100$).

the Court should agree with DOJ's determination that New Mexico's sweeping request was overbroad and that disclosure was therefore unwarranted.

**e. DOJ has not ignored factors its *Touhy* regulations require it to consider.**

New Mexico argues 28 C.F.R. § 16.26(c) requires DOJ to consider five factors where "disclosure is necessary to pursue a civil or criminal prosecution[:]" (1) the seriousness of the crime; (2) the criminal record of the accused; (3) the importance of the relief sought; (4) the importance of the legal issues presented; and (5) other matters brought to the attention of the responsible official. Compl. ¶ 124. This argument is incorrect.

The *Touhy* regulations state that DOJ will consider the above five factors only where disclosure would reveal a confidential source or informant, law enforcement materials, or trade secrets. 28 C.F.R. § 16.26(c) (citing 28 C.F.R. § 16.26(b)(4–6)). Where disclosure would violate a statute, rule of procedure, specific regulation, or reveal classified information, the *Touhy* regulations prohibit disclosure *without* considering the five factors. *Id*. (citing 28 C.F.R. § 16.26(b)(1–3)). DOJ's response noted that New Mexico's *Touhy* request implicated § 16.26(b)(1) when it stated disclosure would violate the Protective Orders and the Privacy Act. *See* Compl., Ex. 3 at 5–6. Thus, the *Touhy* regulations did not require DOJ to consider the five factors contained in § 16.26(c). The rationale behind § 16.26(c)'s carve-out is clear: notwithstanding the obvious seriousness of the crimes New Mexico seeks to prosecute or the importance of justice for Epstein victims, "a valid statute always prevails over a conflicting regulation." *Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 829 (D.C. Cir. 2006). DOJ's regulations cannot justify disclosure which a statute would otherwise bar. *See* 5 U.S.C. § 706(2)(A)(C) (invalidating agency action which is "not in accordance with law" or "in excess of statutory [] authority"). These principles leave no room for applying the § 16.26(c) factors when a governing statute forbids disclosure.

### III. Denying New Mexico's *Touhy* Request is not Unlawfully Withheld or Unreasonably Delayed Agency Action.

New Mexico argues that, to the extent the Court concludes denying the *Touhy* request was not final agency action as defined by the APA, or if responsible officials have not yet reviewed the *Touhy* request, events so far constitute "a consummate failure to act or refusal to act." Compl. ¶ 135; *see also id*. ¶ 131. The Court should not reach this point for two reasons. First, DOJ acted on New Mexico's *Touhy* request when DNM sent its response.[6] *See* Compl., Ex. 3. DOJ has not withheld any action. Second, as explained above, DOJ followed its internal regulations when denying New Mexico's *Touhy* request, and so it did not act "unlawfully." *See supra* at 12–21.

Nevertheless, "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). Relevant factors include: "any statutory timetable or other indication of the speed with which [] Congress expects the agency to proceed; the nature and extent of the interests prejudiced by delay, with particular concern for matters of human health and welfare; and the effect of expediting delayed action on agency activities of a competing or higher priority." *Id*. (citation modified); *see also Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). Here, there is no indication that Congress expects disclosure to New Mexico at all. *See* EFTA. Precedent further underscores that delays significantly exceeding DOJ's timeline have been deemed permissible. In *Mashpee*, for example the plaintiff had waited for agency action "for five years and it was still only third in line." 336 F.3d at 1100. The court noted that other parties had been waiting even longer for a decision. *Id*. In *Arabzada v. Donis*, the court held a two-year delay in the asylum application process was not unreasonable. 725 F. Supp. 3d 1, 9 (D.D.C. 2024). DOJ's alleged

[6] DOJ reaffirms the denial was committed to agency discretion by law. *Supra* at 8–12.

delay—three months, Compl. ¶ 138—is relatively modest in comparison, especially considering the millions of pages contained within the Epstein Files. And, in any event, DOJ has responded. Thus, any potential further review of New Mexico's *Touhy* request would not be action unreasonably withheld.

**CONCLUSION**

For these reasons, the Court should grant DOJ's motion to dismiss or, in the alternative, motion for summary judgment.

Dated: October 12, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Branch Director
Federal Programs Branch

*/s/ Richard C. Giles*
RICHARD C. GILES
Trial Attorney (WY Bar No. 8-7222)
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
(202) 616-8482
Richard.C.Giles@usdoj.gov

*Counsel for Defendants*